UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAX L. KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:15-cv-1408-WTL-DKL |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Max L. King requests judicial review of the final decision of the Defendant, Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), denying King's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I.   APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## II.     BACKGROUND

King protectively filed for DIB and SSI on April 12, 2012, alleging that he became disabled on August 28, 2008, primarily due to degenerative joint disease, degenerative disc disease, obstructive sleep apnea, deep vein thrombosis, obesity, depression, bipolar disorder, anxiety and a panic disorder. King was born on December 3, 1964, and was 49 years old on the date last insured. King has at least a high school education and has past relevant work as a semi-truck driver and tank truck driver.

King's application was denied initially on September 14, 2012, and upon reconsideration on January 4, 2013.[3] Thereafter, King requested and received a hearing before an Administrative Law Judge ("ALJ"). A hearing, during which King was represented by counsel, was held by ALJ Daniel J. Mages on March 4, 2014. An impartial vocational expert also appeared and testified at the hearing. The ALJ issued his decision denying King's claim on April 25, 2014. After the Appeals Council denied his request for review, King filed this timely appeal.

---

[3] King filed a prior application on November 14, 2008. An unfavorable hearing decision was issued on January 24, 2011, by another ALJ. The Appeals Council denied review, and King failed to file an action in District Court. Accordingly, the relevant period for adjudication of the current claim begins on January 25, 2011.

3

### III. THE ALJ'S DECISION

The ALJ determined that King had met the insured status requirements of the Social Security Act through December 31, 2013; therefore, he had to establish disability on or before that date to be entitled to a period of disability and disability insurance benefits. The ALJ determined at step one that King had not engaged in substantial gainful activity during the period from January 25, 2011, through his date last insured of December 31, 2013. At steps two and three, the ALJ concluded that King had the severe impairments of "degenerative joint disease; degenerative disc disease; obstructive sleep apnea; deep vein thrombosis; obesity; depression; bipolar disorder; anxiety; and a panic disorder," Record at 18, and that the impairments more than minimally limited King's ability to perform the full range of basic work activities and therefore were severe within the meaning of the Regulations. The ALJ found that King did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). At step four, the ALJ determined that King had the Residual Functional Capacity ("RFC") to perform a range of sedentary work (20 C.F.R. § 404.1567(a)) defined as follows:

> Sitting six hours during an eight-hour workday; standing and walking two hours during an eight-hour workday, with the use of a cane for walking; lifting, carrying, pushing and pulling ten pounds occasionally and five pounds frequently; occasionally climbing ramps and stairs, balancing, stooping and crouching; no kneeling or crawling; no climbing ladders, ropes or scaffolds; no work around dangerous moving machinery or at unprotected heights; no work involving a risk of deep cuts; no more than moderate exposure to extreme heat, extreme cold, wetness, humidity, dusts, fumes, gases or other respiratory irritants; no complex job tasks but capable of unskilled and semiskilled work; no more than brief and superficial interaction with the public, coworkers or supervisors.

R. at 21-22.

Given this RFC, the ALJ determined that King was unable to perform any of his past relevant work. The ALJ found that there were jobs that existed in significant numbers in the national economy that King could have performed. The vocational expert testified that an individual with King's age, education, work experience, and RFC could perform the requirements of representative unskilled sedentary occupations, including information clerk (DOT #205.367-014); assembler (DOT #734.687-018); and hand packager (DOT #920.687-030). Accordingly, the ALJ concluded that King was not disabled as defined by the Act.

## IV.   EVIDENCE OF RECORD

The relevant medical evidence of record is aptly set forth in King's brief (Dkt. No. 15) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V.   DISCUSSION

In his brief in support of his complaint, King advances one primary argument: the ALJ committed error when he concluded that King's impairment did not meet or equal Listing 1.02 or 1.04. King focuses his argument on the ALJ's failure to consider the examples provided in Listing 100(B) of one's inability to ambulate other than inability to walk without the use of a walker, two crutches or two canes.

Social Security regulations require the ALJ to determine whether the claimant's impairment is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). The ALJ in King's case considered whether King met the requirements of Listing 1.02 describing a "Major Dysfunction of a Joint." That listing provides, in relevant part:

> Major dysfunction of a joint(s)...[is] [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability)

5

and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b....

20 C.F.R. § Pt. 404, Subpt. P, App. 1, listing 1.02A.

> An inability to ambulate is defined as an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, listing 1.00B2b(1), (2).

The ALJ also considered whether King met the requirements of Listing 1.04. That listing provides, in relevant part:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or

6

> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.04.

After finding that King did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, the ALJ provided the following analysis:

> The claimant's lumbar degenerative disc disease has not resulted in the nerve root involvement, sensory or reflex loss, spinal arachnoiditis, or ambulatory limitation required under Listing 1.04 Disorders of the Spine. The claimant uses a cane. However, he is ambulatory without an assistive device. He has normal motor strength, sensation, and reflexes throughout (Exhibit B4F). The record shows no history of arachnoiditis.
>
> With regard to degenerative joint disease, the evidence does not demonstrate the gross anatomical deformity or ambulatory limitations required under listing 1.02(A) Major Dysfunction of a Joint.

R. at 19.

The opinion also states:

> The record also notes the claimant's reports of bilateral knee pain left greater than right (Exhibit 20F at 42). Diagnostic studies revealed lumbar degenerative disc disease and osteoarthritis of the left knee (Exhibit B6F at 1-2; Exhibit B20F at 46-47). The claimant's treatment has consisted of prescribed narcotics and epidural steroid injections (Exhibit 20F at 42-44).

R. at 19.

In explaining the RFC, the opinion states the following:

> This residual functional capacity is consistent with objective medical evidence detailing the claimant's physical capacities prior to the date last insured. He utilizes a cane but is ambulatory without the use of an assistive device. The claimant has full motor strength in the upper and lower extremities. He has decreased range of motion throughout the lumbar spine with normal range of motion in all other joints. No visual, manipulative, or communicative deficits are noted in the record (Exhibit B4F at 1-6).
>
> I impose a restriction to sedentary work activities to accommodate the effects of the claimant's musculoskeletal impairments (i.e. chronic pain in low back and bilateral knees, decreased lumbar range of motion, use of cane). In performing a function-by-function analysis, I find that the claimant's normal upper motor function allows him to lift, carry, push, and pull ten pounds occasionally and five pounds frequently. His intact lower motor strength and ambulatory function enables the claimant to stand and walk (with the use of a cane) for two hours in an eight-hour workday. The record contains no evidence of any impairment precluding the claimant's capacity to sit for six hours of an eight-hour workday.

R. at 22.

The ALJ also considered King's testimony at the hearing:

> At the hearing, the claimant testified that he experiences chronic pain in the low back, knees, and hips. As a result, he is reportedly unable to stand or walk for extended periods. The claimant stated that treatment with oral medication and a series of joint injections provide minimal relief. He further testified that lying down is the only thing that alleviates his musculoskeletal pain. The claimant also endorsed pain and numbness in the lower extremities associated with deep vein thrombosis. He ambulates with a cane.

R. at 23.

The Seventh Circuit has held that the non-exhaustive list of examples of ineffective ambulation set forth in Listing 1.00(B)(2) (b)(2) should be adequately considered in determining whether a claimant can ambulate effectively. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). In *Moss*, the Seventh Circuit found the ALJ's treatment of the medical evidence was not supported by substantial evidence. *Id.* at 560-62. The Seventh Circuit noted that in considering whether the claimant could ambulate effectively as defined by 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B), the ALJ determined that the claimant could effectively ambulate because the

8

claimant "uses just one cane" and "the medical evidence does not point to ineffective ambulation." *Moss*, 555 F.3d at 562. However, given that the Seventh Circuit had already held that "the ALJ's determinations regarding the medical evidence [is] not supported by substantial evidence," the ALJ erred by failing to "adequately consider" the other examples of an inability to ambulate found in Listing 1.00(B)(2)(b)(2). *Id.* at 562-63 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)).

Likewise, the ALJ in this case did not assess whether the other examples of ineffective ambulation were met. As such, he did not "adequately consider whether [the claimant] in fact meets [the listing] based on the provided examples such as an inability to walk a block at a reasonable pace on rough or uneven surfaces, or the inability to carry out routine activities, like shopping and banking." *Moss*, 555 F.3d at 563.

This error, however, would be harmless if King did not point to evidence that would support a finding that he met or equaled the listing. *See Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999) (plaintiff has burden of showing that his impairments meet a listing.) King has not met this burden with regard to Listing 1.04. However, he does point to such evidence as to 1.02.

Specifically, King points to the following evidence to support his inability to ambulate effectively:

> The record documents King's difficulty with ambulation throughout. King has bilateral leg pain with burning especially when ambulating. [Dkt. 13-7 at p.45, R. 244]. He was noted to have an antalgic gait; reduced range of motion with crepitus and joint line tenderness in the left knee. [Dkt. 13-8 at p.52, R. 372]. If he stands for a long time then his leg may give out on him, otherwise he reports no weakness of the lower extremities. [Dkt. 13-8 at p.4, R 324]. He ambulated with a wide base stiff gait flattening the left foot and hyperpronating the right. *Id.* He was able to ambulate on his heels for a few steps but could not maintain dorsiflexion of the left foot and 'slapped' the left foot. *Id.* He was able to stand on his toes for two seconds and could not ambulate on them and had to hold on to

9

> furniture. [Dkt. 13-8 at p.5, R. 325]. His activity is limited, [he] has mowed the lawn on a riding mower and can go to the store but must use the electric cart. [Dkt. 13-8 at p.2, R. 322]. On examination he is overweight, ambulates with a wide-based and waddling gait, has tenderness of L4 and L5, and tenderness of the left greater trochanteric bursa. *Id.* King attended a physical therapy initial evaluation with problems including pain, difficulty with transfers, decreased strength, decreased range of motion, decreased joint mobility, limited activities of daily living, decreasing lifting mechanics, tenderness to palpation, and poor biomechanical alignment/gait deviations. [Dkt. 13-8 at p.91, R. 411]. He reported numbness in both feet after sitting for long as well. *Id.* His lower extremity strength was assessed as being grossly 3+/5 and a patellofemoral grinding test is positive. *Id.* His decreased range of motion and strength are limiting his function significantly, and it was noted that he will not be able to tolerate land therapy. *Id.* Instead it was recommended he start aquatic therapy to decrease compression on his joints, facilitate treatment of multiple sites simultaneously, and utilizing the thermal properties of water to decrease pain. *Id.* His level of functioning is severely limited in that he is unable to bend over to pick things up off the floor; it takes him ten minutes to put on and take off socks; he is unable to lie flat in the bed; he sleeps in a recliner; he is unable to stand or walk more than three to five minutes; and he is unable to sit in a chair for more than twenty minutes. [Dkt. 13-8 at p.93, R. 413]. His gait consists of short shuffling steps with waddling gait, decreased cadence, and decreased knee flexion during swing phase. *Id.* At the physical consultative examination it was noted that King walks at a slowed pace with an assistive device for additional support and appears winded with exertion. [Dkt. 13-8 at p.21, R. 341]. He could squat a quarter of the way down and stand up from that squatted position. *Id.* He was unable to get on and off the examination table without difficulty and the exam was performed in a chair. *Id.* Clinical evidence does support the need for an ambulatory aid based on this examination encounter to provide additional support and to relieve pressure from the right lower extremity. [Dkt. 13-8 at p.22, R. 342]. King worked hard to increase his activity level and at one point was able to walk at the hospital and mall twice a week for one to one and a half hours with rests. [Dkt. 13-11 at p.35, R. 586],

Dkt. Not. 15 at 17-18. Accordingly, the Court must remand the case so that the ALJ can determine whether King meets or equals Listing 1.02 with the guidance provided by *Moss* and 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B).[4]

---

[4] Given that the Court has already determined that the ALJ's Step Three decision was erroneous, the Court need not address whether the ALJ should have obtained expert medical testimony regarding whether King equaled Listing 1.02. On remand, however, the ALJ must explain whether the evidence shows that King meets or equals Listing 1.02 or any other listing. If necessary, the ALJ should obtain additional medical expert evidence to make these

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

**SO ORDERED: 3/10/17**

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

determinations. On remand, the ALJ should also keep in mind the Seventh Circuit's admonition that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (quotation and citation omitted).